UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER ZYNDA, et al.

      Plaintiffs,

v

STEVE ARWOOD, in his official
capacity as Acting Director of the
Michigan Department of Talent and
Economic Development, and
SHARON MOFFETT-MASSEY, in
her official capacity as Director of
the Unemployment Insurance
Agency.

      Defendants.

No. 2:15-cv-11449

HON. ROBERT H. CLELAND

**DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(1)
AND 12(b)(6)**

_____

David M. Blanchard (P67190)
Joseph X. Michael (P79084)
Attorneys for Plaintiffs
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550

_____

Kimberly K. Pendrick (P60348)
Peter T. Kotula (P41629)
Shannon W. Husband (P60352)
Attorneys for Defendants
Michigan Department of Attorney General
Labor Division
3030 W. Grand Blvd., Ste. 9-600
Detroit, MI 48202
(313) 456-2200

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants move

for dismissal of the Plaintiffs' Complaint.  The Plaintiffs improperly

seek federal intervention into state unemployment determinations of

fraud.

1.      Defendants have sought concurrence pursuant to E. D. Mich.

LR 7.1.  Despite reasonable efforts, the movant was unable to conduct a

conference.

2.      The Unemployment Insurance Agency properly applied the

Michigan Employment Security Act, Mich. Comp. Laws, § 421.1, *et. seq.*

3.      This Court should dismiss Plaintiffs' Complaint due to lack

of subject matter jurisdiction as the claims are barred by Eleventh

Amendment sovereign immunity.  U.S. Const. amend. XI.

4.      This Court should dismiss Plaintiffs' Complaint as

Defendants are not "persons" under 42 U.S.C. § 1983.

5.      This Court should dismiss Plaintiffs' Complaint as Plaintiffs

lack standing to bring this suit as there is no injury in fact or causation,

and redressability is speculative.  Further, Sugar Law and the UAW are

1

asserting the claims of third parties and the UAW lacks associational standing.

6.     This Court should dismiss Plaintiffs' Complaint under the *Burford* abstention doctrine as the State's complex regulatory unemployment scheme would be disrupted by federal review. *Burford v. Sun Oil Corp.,* 310 U.S. 315 (1943).

7.     This Court should dismiss Plaintiffs' self-incrimination claims under the U.S. Constitution's Fifth Amendment and Mich. Const. art. I, § 17 as neither Constitution is violated by the State requiring mandatory reporting, the privilege was not asserted, and the Michigan Employment Security Act provides for immunity from criminal prosecution.

8.     This Court should dismiss Plaintiffs' U.S. Constitution Eighth Amendment excessive fines claim as the Supreme Court has never announced that the federal excessive fines clause applies to the states and the statutory civil penalty is not excessive.

9.     This Court should dismiss Plaintiffs' Mich. Const. art. 1, § 17 excessive fines claim as the statutory civil penalty is not excessive and the amount of the penalty is not discretionary.

2

10.     This Court should dismiss Plaintiffs' U.S. Constitution Fourth Amendment search and seizure claims as the seizure of fraudulently obtained benefits is not unreasonable, the authority to recover fraudulently obtained benefits is provided by statute, and the seizure provisions are not applicable to the collection of public revenue.

11.     This Court should dismiss Plaintiffs' Social Security Act claims, as the Social Security Act does not provide Plaintiffs with a private right of action.

12.     This Court should deny Plaintiffs' request for declaratory relief as such request would not settle the controversy or clarify the legal relations in issue, and would, in fact, result in friction between federal and state courts.

WHEREFORE, Defendants request this Honorable Court to dismiss Plaintiffs' Complaint in its entirety and award any appropriate costs and fees.

Respectfully submitted,

Bill Schuette
Attorney General

3

/s/ Kimberly K. Pendrick
Kimberly K. Pendrick
Peter T. Kotula (P41629)
Shannon W. Husband (P60352)
Assistant Attorneys General
Attorneys for Defendants
Labor Division
3030 W. Grand Blvd., Ste. 9-600
Detroit, MI 48202
(313) 456-2200
kendrickk@michigan.gov
P60348

Dated:  July 10, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2015, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ Kimberly K. Pendrick
Assistant Attorney General
Attorney for Defendants
Labor Division
3030 W. Grand Blvd., Ste. 9-600
Detroit, MI  48202
(313) 456-2200
pendrickk@michigan.gov
P60348

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER ZYNDA, et al.

      Plaintiffs,

v

STEVE ARWOOD, in his official capacity as Acting Director of the Michigan Department of Talent and Economic Development, and SHARON MOFFETT-MASSEY, in her official capacity as Director of the Unemployment Insurance Agency.

      Defendants.

No. 2:15-cv-11449

HON. ROBERT H. CLELAND

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

_____

David M. Blanchard (P67190)
Joseph X. Michael (P79084)
Attorneys for Plaintiffs
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550

_____

Kimberly K. Pendrick (P60348)
Peter T. Kotula (P41629)
Shannon W. Husband (P60352)
Attorneys for Defendants
Michigan Department of Attorney General
Labor Division
3030 W. Grand Blvd., Ste. 9-600
Detroit, MI 48202
(313) 456-2200

_____/

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Bill Schuette
Attorney General

Kimberly K. Pendrick (P60348)
Peter T. Kotula (P41629)
Shannon W. Husband (P60352)
Assistant Attorneys General
Attorneys for Defendants
Labor Division
3030 W. Grand Blvd., Ste. 9-600
Detroit, MI 48202
(313) 456-2200

Dated: July 10, 2015

# TABLE OF CONTENTS

Page

Table of Contents.................................................................................i

Index of Authorities...........................................................................iii

Concise Statement of Issues Presented......................................x

Controlling or Most Appropriate Authority ...........................xi

Introduction ........................................................................................1

Statement of Facts.............................................................................5

    Plaintiffs' Complaint ......................................................................5

    The MES Act.....................................................................................5

Argument ...........................................................................................12

I.      Standard of Review ...................................................................12

II.    Plaintiffs' suit is barred by sovereign immunity. ..........14

III.   Plaintiffs' § 1983 claim fails because Defendants are not "persons" as defined under 42 U.S.C. § 1983. ..............16

IV.   Plaintiffs lack standing to bring this lawsuit. ...............20

    A.    Individual Plaintiffs lack standing .......................21

    B.    Sugar Law and UAW lack standing.....................22

    C.    UAW lacks associational standing .......................25

V.    The Court should abstain from review of the State's unemployment insurance program ................................27

VI.   Plaintiffs' constitutional claims fail to state a claim upon which relief can be granted.............................................29

A. Plaintiffs' self-incrimination claims fail because mandatory state reporting requirements do not violate the Fifth Amendment and the MES Act contains an immunity provision. ............................................................29

B. The fraud penalty is not an excessive fine under the federal or state constitutions because the amount is set by the MES Act and protects the integrity of the unemployment system. ...........................................................33

1. United States Constitution claim ................................33

2. Michigan State Constitution claim ............................37

C. The search and seizure provision of the U.S. Constitution does not apply to civil attachments. ...............39

VII. The Social Security Act authorizes no private right of action. .....41

VIII. Declaratory Relief is unavailable under the Declaratory Judgment Act. ...................................................................43

Conclusion and Relief Requested ..............................................45

Certificate of Service ...............................................................46

# INDEX OF AUTHORITIES

Page

## Cases

*Ada-Cascade Watch Co. v. Cascade Resource Recovery, Inc.,*
  720 F.2d 897 (6th Cir. 1983) ................................................................ 27

*Allard v. Weitzman, (In Re DeLorean Motor Corp),*
  991 F.2d 1236 (6th Cir. 1993) .............................................................. 14

*Association of Data Processing Serv. Orgs., Inc. v. Camp,*
  397 U.S. 150 (1970) .............................................................................. 24

*Blessing v Freestone,*
  520 U.S. 329 (1997) .............................................................................. 42

*Browning-Ferris Indus. v. Kelco Diosposal,*
  492 U.S. 257 (1989) ......................................................................... xi, 34

*Burford v. Sun Oil,*
  310 U.S. 315 (1943) .................................................................. xi, 27, 28

*Camden County Beverage Co. v. Blair,*
  46 F.2d 648 (D.N.J. 1930) .................................................................... 40

*Director, Bureau of Workers' Disability Compensation v.*
  *BMC Mfg., Inc.,* 200 Mich. App. 478; 504 N.W.2d 695 (1993) ....... 38, 39

*Edelman v. Jordan,*
  415 U.S. 651 (1974) .............................................................................. 19

*Emmet County Prosecuting Atty. v.*
  *Two Thousand Two Hundred Dollars in U.S. Currency (In re*
  *Forfeiture of 5118 Indian Garden Rd.),*
  253 Mich. App. 255; 654 N.W.2d 646 (2002) ...................................... 34

*Ford Motor Co. v. Dept. of Treasury of Indiana,*
  323 U.S. 459 (1945) .............................................................................. 15

*Gao v. Jennifer,*
    185 F.3d 548 (6th Cir. 1999) ............................................................... 14

*Gonzaga Univ. v. Doe,*
    536 U.S. 273 (2002) ................................................................... xi, 42

*Gould Inc. v. Pechiney Ugin Kuhlmann,*
    853 F.2d 445, 450 (6th Cir. 1988) ....................................................... 13

*Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.,*
    746 F.2d 323 (6th Cir. 1984) ........................................................ xi, 44

*Helvering v. Mitchell,*
    303 U.S. 391 (1938) ........................................................................... 35

*Hudson v U.S.,*
    522 U.S. 93 (1997) ..................................................................... 34, 35

*Hughlett v. Romer-Sensky,*
    497 F.3d 557 (6th Cir. 2006).................................................. 41, 42, 43

*Hunt v. Washington Apple Advertising Comm'n,*
    432 U.S. 333 (1977) ........................................................................... 25

*Jewell v. United States,*
    548 F.3d 1168 (8th Cir. 2008) .......................................................... 21

*Kastigar v. United States,*
    406 U.S. 441 (1972) ..................................................................... xi, 33

*Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ............................................................................. 19

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................ xi, 21, 22, 23

*M&D, Inc. v. McConkey,*
    231 Mich. App. 22; 585 N.W.2d 33 (1998) ..................................... 31, 32

*Madison-Hughes v. Shalala,*
    80 F.3d 1121 (6th Cir. 1996) ............................................................ 13

iv

*Mayer v. Mylod,*
   988 F.2d 635 (6th Cir. 1993) ............................................................ 14

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ......................................................................... 43

*Miranda v. Ariz.,*
   384 U.S. 436 (1966) ......................................................................... 32

*Mooney v. Unemployment Compensation Comm'n.,*
   336 Mich. 344; 58 N.W.2d 94 (1953) ................................................ 18

*Nestle Ice Cream Co. v. NLRB,*
   46 F.3d 578 (6th Cir. 1995) .............................................................. 26

*New Orleans Public Service, Inc. (NOPSI) v.*
   *Council of the City of New Orleans,* 491 U.S. 350 (1989) ................... 28

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ......................................................................... 19

*Pennhurst State School and Hospital v. Halderman,*
   465 U.S. 89 (1984) ...................................................................... xi, 15

*Perry v. American Tobacco Co.,*
   324 F.3d 845 (6th Cir. 2003) ............................................................ 14

*Public Service Comm. of Utah v. Wycoff,*
   344 U.S. 237 (1952) ......................................................................... 43

*Scheuer v. Roads,*
   416 U.S. 232 (1974) ......................................................................... 13

*Scottsdale Ins. Co. v. Flowers,*
   513 F.3d 546 (6th Cir. 2008) ............................................................ 45

*Seminole Tribe of Florida v. Florida,*
   517 U.S. 44 (1996) ........................................................................... 15

*Sistrunk v. City of Strongsville,*
   99 F.3d 194 (6th Cir. 1996) .............................................................. 14

*St. Louis, I. M. & S. R. Co. v Williams,*
  251 U.S. 63 (1919) ................................................................ 34

*State ex rel. Osburn v. Cole,*
  173 W. Va. 596 (1983) ......................................................... 30

*State v. Rivers,*
  146 P.3d 999 (Alaska Ct. App. 2006) ................................... 32

*Thomson v. Gaskill,*
  315 U.S. 442 (1942) ............................................................. 13

*U. S. v. Droganes,*
  728 F.3d 580 (6th Cir. 2013) ............................................... 34

*U.S. ex. rel. Smith v. Gilbert Realty Co., Inc.,*
  840 F. Supp. 71 (E.D. Mich. 1993) ................................. 35, 36

*U.S. v. Bajakajian,*
  524 U.S. 321 (1998) ..................................................34, 35, 36

*U.S. v. Ritchie,*
  15 F.3d 592 (6th Cir. 1994) ................................................. 13

*U.S. v. Students Challenging Regulatory Agency Procedures,*
  412 U.S. 669 (1973) ............................................................. 20

*United States v. Nat'l Bank of Commerce,*
  472 U.S. 713 (1985) ....................................................... xi, 40

*United States v. Rylander,*
  460 U.S. 752 (1983) ............................................................. 30

*Valley Forge Christian College v.*
  *Americans United for Separation of Church and State, Inc.,*
  454 U.S. 464 (1982) ....................................................... 20, 21

*Warth v. Seldin,*
  422 U.S. 490 (1975) ............................................................. 20

*Will v. Michigan Department of State Police, et al.,*
  491 U.S. 58 (1989) ................................................... xi, 16, 17

*WJW-TV, Inc. v. City of Cleveland,*
   870 F.2d 658 (6th Cir. 1989) ................................................................23

**Statutes**

26 U.S.C. § 3304.........................................................................................28

28 U.S.C. § 1257.........................................................................................10

28 U.S.C. § 2201.........................................................................................43

42 U.S.C. § 1983.........................................................................................16

42 U.S.C. § 501...........................................................................................12

42 U.S.C. § 503.............................................................................................5

42 U.S.C. § 503(a).........................................................................................6

42 U.S.C. § 503(a)(3)...................................................................................42

42 U.S.C. § 503(b).........................................................................................6

Mich. Comp. Laws § 421.1 ..........................................................................1

Mich. Comp. Laws § 421.15(m)...................................................................40

Mich. Comp. Laws § 421.15(n)....................................................................40

Mich. Comp. Laws § 421.2 ...........................................................6, 22, 24

Mich. Comp. Laws § 421.26 .......................................................................39

Mich. Comp. Laws § 421.27(c)(1) ................................................................8

Mich. Comp. Laws § 421.27(c)(2) ................................................................8

Mich. Comp. Laws § 421.27(c)(3) ................................................................8

Mich. Comp. Laws § 421.28 .........................................................................7

Mich. Comp. Laws § 421.29 .........................................................................7

Mich. Comp. Laws § 421.29(1)(a)-(n)..........................................................7

Mich. Comp. Laws § 421.32 ....................................................................9

Mich. Comp. Laws § 421.32a .................................................................9

Mich. Comp. Laws § 421.32a(2) ...........................................................9

Mich. Comp. Laws § 421.33(1) ........................................................9, 10

Mich. Comp. Laws § 421.33(2) ...........................................................10

Mich. Comp. Laws § 421.34 ................................................................10

Mich. Comp. Laws § 421.38 ................................................................10

Mich. Comp. Laws § 421.46 ..................................................................7

Mich. Comp. Laws § 421.48 ..................................................................7

Mich. Comp. Laws § 421.54 ...........................................................29, 39

Mich. Comp. Laws § 421.54(b) ...........................................................38

Mich. Comp. Laws § 421.54(b)(i) ..................................................11, 38

Mich. Comp. Laws § 421.54(b)(ii) .................................................11, 38

Mich. Comp. Laws § 421.62 .....................................................11, 29, 40

Mich. Comp. Laws § 421.62(d) ...........................................................11

Mich. Comp. Laws § 421.6g.................................................................12

Mich. Comp. Laws § 600.4401.............................................................12

Pub. L. 99-562, 100 Stat. 3153 (1986).................................................35

## Executive Orders

Executive Order 13520 ...........................................................................2

## Rules

Fed. R. Civ. P. (12)(b)(6) .............................................................13, 14

Fed. R. Civ. P. 12(b)(1) .................................................................. 12, 13, 16

Fed. R. Civ. P. 12(b)(6) .................................................................. 17, 41

Mich Ct. R. 3.305 ............................................................................ 12

## Constitutional Provisions

Mich. Const. art. VI, § 4 ................................................................ 12

U.S. Const. amend IV ...................................................................... 40

U.S. Const. amend XI ...................................................................... 15

## Other Authorities

DOL 8/7/12 Unemployment Insurance Program Letter No. 02-12 .......... 4

Handbook for Unemployed Workers, August 2014 .................................. 8

IPIA 2014 Unemployment Insurance Integrity Rates ............................ 37

Payment Accuracy, *High-Error Programs* ............................................ 2, 3

U.S. Dept. of Labor, *UI Payment Integrity Information*, Sept. 26,
    2011 ............................................................................................... 2

## CONCISE STATEMENT OF ISSUES PRESENTED

1.     This Court should dismiss Plaintiffs' Complaint due to lack of subject matter jurisdiction as the claims are barred by Eleventh Amendment sovereign immunity.

2.     This Court should dismiss Plaintiffs' Complaint, as Defendants are not "persons" as required by 42 U.S.C. § 1983.

3.     This Court should dismiss Plaintiffs' Complaint as the Plaintiffs' lack standing.

4.     This Court should abstain from this matter on the basis of the *Burford v. SunOil Corp.,* 310 U.S. 315 (1943) federal abstention doctrine as federal jurisdiction would interfere with the administrative process authorized by the Michigan Employment Security Act.

5.     This Court should dismiss Plaintiffs' self-incrimination claims under the U.S. Constitution's Fifth Amendment and Mich. Const. art. I, § 17 as neither Constitution is violated by the State requiring mandatory reporting, the privilege was not asserted, and the Michigan Employment Security Act provides for immunity from criminal prosecution.

6.     This Court should dismiss Plaintiffs' U.S. Constitution Eighth Amendment excessive fines claim as the Supreme Court has never announced that the federal excessive fines clause applies to the states and the statutory civil penalty is not excessive.

7.     This Court should dismiss Plaintiffs' Mich. Const. art. 1, § 17 excessive fines claim as the statutory civil penalty is not excessive and the amount of the penalty is not discretionary.

x

8.   This Court should dismiss Plaintiffs' U.S. Constitution
     Fourth Amendment search and seizure claims, as the
     seizure of fraudulently obtained benefits is not
     unreasonable, the authority to obtain fraudulently obtained
     benefits is provided by statute, and the seizure provisions
     are not applicable to the collection of public revenue.

9.   This Court should dismiss Plaintiffs' Social Security Act
     claims, as the Social Security Act does not provide Plaintiffs
     with a private right of action.

10.  This Court should deny Plaintiffs' request for declaratory
     relief wherein such request would not settle the controversy
     or clarify the legal relations in issue and would, in fact,
     result in friction between the federal and state courts.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Browning-Ferris Indus. v. Kelco Diosposal,* 492 U.S. 257 (1989)

*Burford v. Sun Oil*, 310 U.S. 315 (1943)

*Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002)

*Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.,* 746 F.2d 323
(6th Cir. 1984)

*Kastigar v. United States*, 406 U.S. 441 (1972)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89 (1984)

*United States v. Nat'l Bank of Commerce*, 472 U.S. 713 (1985)

*Will v. Michigan Department of State Police, et al.,* 491 U.S. 58 (1989)

**INTRODUCTION**

Plaintiffs' Complaint has no merit. The Unemployment Insurance Agency (Agency) properly applied the Michigan Employment Security Act (MES Act), Mich. Comp. Laws § 421.1, *et. seq.* Plaintiffs simply disapprove of the Agency's method of pursuing unemployment benefit fraud and wish to overturn final decisions issued by the Agency or other State administrative and judicial forums. Any complaints regarding MES Act provisions should be pursued via the legislative process and not with litigation in this Court.

The Agency is hard-pressed to maintain the financial integrity of the unemployment insurance program. It must offer the economic shield of unemployment benefits to claimants otherwise eligible and qualified while it must remain vigilant to identify fraudulent claims and reclaim any sums improperly paid. It is a fine balance maintained by the Michigan Legislature for over 75 years. Plaintiffs complain of the Agency's application and determination process. Yet it is this application and determination process that reflects the compromise maintained by the Legislature between eradicating fraud while providing unemployment benefits. Notably, as a joint federal and state

program, federal mandates for the prevention of fraud and improperly paid benefits also apply.

In 2009, President Obama signed Executive Order 13520, which directed executive departments and agencies to intensify efforts "to eliminate payment error, waste, fraud, and abuse in major programs administered by the Federal Government."[1]  One such federally administered program with a high error rate is the Unemployment Insurance program administered by the Department of Labor (DOL), with an error rate of 11.6 percent.  (Payment Accuracy High-Error Program chart, Attachment A.)[2]  The Unemployment Insurance program's error rate of 11.6 percent is the fourth highest of the 13 high-error federal programs and in 2015 accounted for $5.6 billion in improper payments.  (Attachment A.)  In Michigan, the overpayment rate for third quarter 2013 through second quarter 2014 increased from

---

[1]  U.S. Dept. of Labor, *UI Payment Integrity Information*, Sept. 26, 2011, http://www.ows.doleta.gov/unemploy/improp_pay1.asp

[2]  Payment Accuracy, *High-Error Programs*, http://paymentaccuracy.gov/high-priority-programs

8.06 percent to 17.45 percent.  The fraud rate increased from 2.25

percent to 3.35 percent.  (Attachment B).[3]

Based upon the foregoing, it has been recognized that

unemployment fraud is a serious issue confronting most states across

the nation.  In conjunction with the President's executive order, the

DOL "announced a call to action to all states to ensure that payment

integrity remains a top priority and to foster the development of state

specific strategies to prevent improper payments."  (Attachment C.)[4]

This call to action demands that states "implement state-specific action

plans to reduce their rates [of improper payments]."  *Id.*

As part of its funding program under the Social Security Act

(SSA), the DOL mandates that states "impose a monetary penalty (an

amount not less than 15 percent of the erroneous payment) on

claimants whose fraudulent acts resulted in overpayments" and

prohibits states from waiving this Federally-mandated minimum

penalty.  (See DOL 8/7/12 Unemployment Insurance Program Letter

---

[3] U.S. Dept. of Labor, *IPIA 2013 – IPIA 2014 Integrity Rate Changes*, https://www.oui.doleta.gov/unemploy/bam/2014/IPIA_2013_-_IPIA_2014_Integrity_Rate_Changes.xlsx

[4] U.S. Dept. of Labor, *Unemployment Insurance (UI) Improper Payments*, http://www.dol.gov/dol/maps/Strategies.htm.

3

No. 02-12, Change 1, Attachment D, pp. 1, 3.)  A state's failure to implement the mandatory minimum penalty results in a loss of certification by the DOL and a loss of funding.  (Attachment D, p. 6.)  As a result, the Agency is tasked with improving its fraud detection controls, mandated by the DOL, in order to receive federal funds.

Each individual Plaintiff had the ability to pursue an appeal. Interestingly, a review of the Complaint, assuming all allegations contained therein are true, demonstrates that four of the seven individual Plaintiffs (Saylor, Wessinger, Witt and Zynda) successfully appealed their fraud determinations.  (Complaint, ¶¶s 30, 36, 43 and 46.)  Two of the Plaintiffs (Grifka and Miller) did not timely appeal their Agency fraud determinations.  (Complaint, ¶¶ 21, 40.)  There is no information alleged regarding the status of the last Plaintiff (Balma). The Plaintiffs' assertions demonstrate that use of the MES Act's appeal rights allowed for a result in favor of those claimants who chose to avail themselves of the available procedures.  Plaintiffs are simply disappointed at the Agency's initial fraud findings.  Such disappointment does not equate with actionable claims.

## STATEMENT OF FACTS

<u>Plaintiffs' Complaint</u>

Plaintiffs allege that the Agency unconstitutionally denied the individual Plaintiffs due process, required them to self-incriminate themselves, subjected them to excessive fines, and exposed them to unlawful search and seizure when the Agency determined them to have committed fraud while seeking unemployment benefits.  (See Complaint.)  Plaintiff Sugar Law Center claims that the manner in which the Agency determinations are made has resulted in an increased administrative burden in its handling of unemployment appeals for indigent clients.  (Complaint, ¶52.)  Plaintiff UAW alleges that its members experience unemployment and it seeks to protect its members' constitutional and statutory rights.  (Complaint, ¶54.)

<u>The MES Act</u>

In 1935, the SSA was enacted and instituted a payroll tax on covered employers to establish an unemployment insurance system.  42 U.S.C. § 503, *et. seq*.  The SSA provides a credit for employer contributions if the state enacts mandatory unemployment-insurance legislation that meets certain requirements.  *Id*.  To receive federal

funding, the state is required to establish administration methods found by the Secretary of Labor to be reasonably calculated to ensure, in part,:  full payment of unemployment compensation when due; payment through approved public offices or agencies; an opportunity for a fair hearing when claims are denied; reporting requirements; and that claimants receiving unemployment benefits participate in reemployment services.  42 U.S.C. § 503(a).  The SSA further provides that the penalty to the state for non-compliance, after "reasonable notice and opportunity for hearing to the State agency," is that the Secretary of Labor will cease further payments until any issue is cured. 42 U.S.C. § 503(b).

While establishment of an unemployment system was voluntary, Michigan enacted the MES Act in 1936 for the welfare of its citizens subjected to "[i]nvoluntarily unemployment."  Mich. Comp. Laws § 421.2.  However, Michigan's unemployment system is not a need-based, welfare, or entitlement program.

Instead, the MES Act contains specific eligibility requirements and disqualification provisions for a claimant attempting to receive benefits.  To be eligible for benefits, among other requirements, a

claimant must be unemployed, registered for work, actively seeking work, and available to perform suitable full-time work. Mich. Comp. Laws § 421.28. An individual is "unemployed" if they have performed no services nor received any income or, for any week of less than full-time employment, they received income that is less than $1\frac{3}{5}$ times their unemployment weekly benefit amount. Mich. Comp. Laws § 421.48. A claimant must also have worked a sufficient number of weeks to establish a benefit year to qualify. Mich. Comp. Laws § 421.46.

The MES Act sets forth various situations where a claimant, although *eligible* for benefits, may be disqualified from receiving unemployment benefits. Mich. Comp. Laws § 421.29(1)(a)-(n). Under Section 29, situations leading to disqualification include, but are not limited to, leaving work voluntarily without good cause attributable to the employer; terminations due to misconduct; intoxication while at work; assault and battery at work; and, theft at work. *Id*.

Once the Agency deems a claimant eligible and qualified for benefits, the claimant must certify biweekly to the Agency to maintain eligibility to receive benefits. Generally, claimants certify through MARVIN (Michigan's Automated Response Voice Interactive Network)

or its online equivalent.  From either the telephone or online version,

MARVIN asks the same series of questions including "Did you do any

type of work for pay or promise to pay . . .?" and "Did you have any

earnings . . . ?" If a claimant has any earnings, the benefit amount will

be reduced pursuant to the MES Act.  Upon filing a claim for benefits,

the Agency specifically informs claimants: "You must provide truthful

responses to all Agency questions and requests for information, or you

may be considered to have intentionally misled the UIA, and fraud

penalties may be imposed."  (Agency's Handbook for Unemployed

Workers, August 2014, Attachment E, p. 2.)

The MES Act provides that eligible and qualified claimants

receive a weekly benefit rate.  Mich. Comp. Laws § 421.27(c)(1).  The

benefit amount is reduced for each week the claimant earns or receives

income at the rate of 40¢ per $1.00 earned.  Mich. Comp. Laws §

421.27(c)(2).  The claimant cannot receive any unemployment benefits

that would result in their combined benefits and additional income

exceeding $1\tfrac{3}{5}$ times his or her weekly benefit rate.  Mich. Comp. Laws §

421.27(c)(3).

When an individual files a claim for benefits, the Agency obtains

information from the claimant and employer in order to determine if the

claimant is *eligible* and *qualified*.  The Agency asks both claimant and

employer whether the claimant has earned sufficient wages and the

reason for separation from employment.  From this information, the

Agency issues a determination as to whether the claimant is or is not

entitled to unemployment benefits.  If information is later provided, the

Agency can issue subsequent redeterminations when it is determined

the claimant is ineligible or disqualified from receiving benefits.  Mich.

Comp. Laws § 421.32.  If either the claimant or the employer disagree

with any determination, the MES Act provides an extensive appellate

process:

- <u>*Redetermination*</u> – A party requests review by the Agency or transfer to an ALJ for a hearing.[5]  Mich. Comp. Laws § 421.32a.

- <u>*ALJ Hearing*</u> – The parties have 30 days to file an appeal with the Agency for a hearing before an ALJ, otherwise, the redetermination is final.  *Id*.  Mich. Comp. Laws § 421.33(1).  The ALJ is tasked with

---

[5]  While either party has 30 days to appeal the matter to the next level, if they fail to appeal timely, a late appeal can be considered where good cause for the delay is established.  Mich. Comp. Laws § 421.32a(2).

affording all parties "a reasonable opportunity for a fair hearing" and issuance of a decision.  *Id*.

- *Michigan Compensation Appellate Commission (Appellate Commission)* – The parties have 30 days to appeal an ALJ decision to the Appellate Commission. Mich. Comp. Laws § 421.33(2).  The Appellate Commission can make a decision upon review of the record, obtain additional evidence and grant an oral hearing.  Mich. Comp. Laws § 421.34.

- *Circuit Court appeal* – If either party disagrees with the decision of the Appellate Commission, they have the ability to file an application for review in the circuit court.  Mich. Comp. Laws § 421.38.  If the parties agree, they can also waive review by the Appellate Commission and appeal directly to the circuit court. Mich. Comp. Laws § 421.38.

- *Michigan Court of Appeals and Michigan Supreme Court* – Finally, the MES Act provides that the decision of the circuit court "may be appealed in the manner provided by the laws of this state for appeals from the circuit court."  Mich. Comp. Laws §421.38.

- *Supreme Court of the United States* – Once a decision is obtained from the Michigan Supreme Court, claimants have the option of filing for a writ of certiorari with the U.S. Supreme Court.  28 U.S.C. § 1257 should they allege violation of federal law or Constitution protections or rights.

The Agency is tasked with ensuring that claimants do not fraudulently obtain unemployment benefits.  Individuals seeking unemployment benefits are informed that failure to provide truthful information may result in the assessment of fraud penalties for

intentionally misleading the Agency.  (Attachment E, p. 2.)  There are many instances where claimants commit fraud in order to obtain benefits by providing dishonest statements regarding work separation; subsequent employment; amount of earnings while collecting benefits; and return to work date.

The MES Act provides that if the Agency determines that a person obtains benefits to which they are not entitled, the Agency can recover the restitution amount paid plus interest.  Mich. Comp. Laws § 421.62.  Further, the MES Act provides that any person who "makes a false statement or representation knowing it to be false, or knowingly and willfully with intent to defraud fails to disclose a material fact, to obtain or increase a benefit" can be assessed a penalty of "equal to 2 times" the amount received for obtaining benefits of less than $500.00 and a penalty of "equal to 4 times" the amount received for obtaining benefits of $500.00 or more.  Mich. Comp. Laws § 421.54(b)(i) and (ii).

Finally, the MES Act provides that "[t]he unemployment agency *shall* take the action necessary to recover all benefits improperly obtained or paid under this act, and to *enforce all interest and penalties* under subsection (b)."  Mich. Comp. Laws § 421.62(d) (emphasis added).

## ARGUMENT

There are no statutory requirements applicable to the Agency relative to how to detect fraud.  The SSA contains no provisions mandating or directing the states on the detection of fraud.  42 U.S.C. § 501, *et. seq.*  The MES Act requires fraud detection and prevention, but it does not set forth any specific means by which fraud determinations are made; however, the Michigan Legislature did appropriate funds to be used to secure automated systems for fraud control and collection. Mich. Comp. Laws § 421.6g.

If a legal mandate for fraud detection existed, Plaintiffs could have attempted to obtain a Writ of Mandamus which would compel the agency to perform a legally required ministerial duty.   Mich. Const. art. VI, § 4; Mich. Comp. Laws § 600.4401; Mich Ct. R. 3.305.  However, there is no statutory provision that the Agency is alleged to have not performed.  Instead, Plaintiffs request a federal review of state Agency procedures for fraud detection that has no basis in federal law.

## I.    Standard of Review

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) seeks dismissal of a lawsuit because the court

12

lacks authority to hear the dispute.  Once a lack of subject matter

jurisdiction is asserted, the Plaintiff bears the burden of establishing

that the court has subject matter jurisdiction over the dispute.

*Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Madison-Hughes v.*

*Shalala*, 80 F.3d 1121 (6th Cir. 1996).  As a general rule, the court

should resolve a 12(b)(1) challenge before it addresses any other legal

issues.  *Gould Inc. v. Pechiney Ugin Kuhlmann*, 853 F.2d 445, 450 (6th

Cir. 1988).  If a 12(b)(1) motion challenging the court's subject matter

jurisdiction is based on the sufficiency of the allegations, then the

motion is a facial attack.  *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir.

1994).  In a facial attack, the district court will accept all material

allegations of a complaint as true and construe those facts in the light

most favorable to the non-moving party.  *Scheuer v. Roads*, 416 U.S.

232, 236 (1974); *Ritchie*, 15 F.3d at 598.

A motion to dismiss for "failure to state a claim upon which relief

can be granted" is governed by Fed. R. Civ. P. (12)(b)(6).  The purpose of

Rule 12(b)(6) is to permit a defendant to determine, as a matter of law,

whether a plaintiff is not entitled to legal relief even if all of facts

alleged in the plaintiff's complaint are true.  *Mayer v. Mylod*, 988 F.2d

13

635, 638 (6th Cir. 1993). A motion to dismiss brought under Rule

12(b)(6) for failure to state a claim upon which relief can be granted

tests the opponent's cause of action as set forth in the complaint and,

accordingly, does not challenge a plaintiff's factual allegations. *Gao v.*

*Jennifer*, 185 F.3d 548, 552 (6th Cir. 1999). The court accepts the

allegations as true, and dismissal under Rule 12(b)(6) is proper only if it

is clear that no relief could be granted under any set of facts consistent

with the allegations. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197

(6th Cir. 1996). A complaint must contain either direct or inferential

allegations establishing all of the material elements of a claim to

sustain a recovery under some viable legal theory. *Allard v. Weitzman,*

*(In Re DeLorean Motor Corp)*, 991 F.2d 1236, 1240 (6th Cir. 1993). The

court is not required to view certain legal conclusions as true, nor is it

obligated to draw unwarranted factual inferences in the non-movant's

favor. *Perry v. American Tobacco Co.*, 324 F.3d 845, 858 (6th Cir. 2003).

## II. Plaintiffs' suit is barred by sovereign immunity.

Where there is no express waiver or Congressional abrogation, the

Eleventh Amendment bars claims filed in federal court against a state

and its agencies.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73

(1996).  The Eleventh Amendment specifically states:

> The judicial power of the United States shall not be
> construed to extend to any suit in law or equity, commenced
> or prosecuted against one of the United States by citizens of
> another state, or by citizens or subjects of any foreign state.

U.S. Const. amend XI.  This constitutional provision bars suits in

federal courts against a state, its agencies, and officials sued in their

official capacities, whether for money damages or injunctive relief,

retroactive or prospective, unless this immunity from suit is expressly

waived by the state or Congress.  *Pennhurst State School and Hospital*

*v. Halderman,* 465 U.S. 89, 119-20 (1984).

A state's consent to suit in federal court must be "unequivocally

expressed."  *Pennhurst*, 465 U.S. at 99.  The Eleventh Amendment also

bars a suit against state officials when "the state is the real, substantial

party in interest."  *Pennhurst*, 465 U.S. at 101 (citing *Ford Motor Co. v.*

*Dept. of Treasury of Indiana*, 323 U.S. 459, 464 (1945)).  A suit is

considered against the state when the relief sought would operate

against it.  *Pennhurst*, 465 U.S. at 101.

The State of Michigan, by and through its Directors, has not

expressly consented to suit in federal court.  Nor have the Plaintiffs

pled a procedural vehicle by which federal constitutional rights may be asserted as a cause of action.  In other words, Plaintiffs have failed to cite a specific federal statute which provides for an express constitutional waiver of Eleventh Amendment jurisdictional immunity. This is the only mechanism by which this jurisdictional immunity may be waived.  Therefore, Plaintiffs' suit should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## III.   Plaintiffs' § 1983 claim fails because Defendants are not "persons" as defined under 42 U.S.C. § 1983.

Independent of the Eleventh Amendment, which is applicable in federal court, a state is not a sueable person within the meaning of 42 U.S.C. § 1983.  *Will v. Michigan Department of State Police, et al.,* 491 U.S. 58, 71 (1989).   The United States Code, Section 1983 provides in pertinent part:

> Every *person* who, under color of any statute, ordinance, regulation, custom or usage of any state . . . subjects or causes to be subjected, any citizens of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983 (emphasis added).

The Supreme Court has also recognized that even if a plaintiff files a claim against state officials, which are literally persons, a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71. Therefore, even assuming all of the facts alleged to be true, Defendants are entitled to an order dismissing Plaintiffs' claim pursuant to Fed. R. Civ. P. 12(b)(6).

The only exception recognized by the Supreme Court to this exclusion of official capacity claims is where the claimant seeks only prospective injunctive relief. *Will*, 491 U.S. at 71. As explained by the *Will* Court, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 (citations omitted). Thus, Plaintiffs' request to re-open previously adjudicated matters; order return of collected restitution/penalty payments; provide compensatory damages; and pay attorney fees should be dismissed because they are all retrospective and, essentially, a second attempt to secure unemployment benefits.

As Michigan courts recognize, the only procedure to appeal or protest a decision issued under the MES Act is through the MES Act itself. *Mooney v. Unemployment Compensation Comm'n.*, 336 Mich. 344, 353; 58 N.W.2d 94 (1953). Any other means are invalid. Here, Plaintiffs attempt to evade the decisions issued against them in state administrative forum or courts. By operation of law, those decisions are final. This Court should not reward Plaintiffs' attempt at creating a federal appeal by proxy.

The only prospective relief Plaintiffs have requested is to require Defendants to "establish and maintain proper procedures for the determination of UIA benefit fraud." (Complaint, ¶ D, p. 27.) But proper procedures are in place. Punctuating the point, the instant Plaintiffs who timely exercised their statutory protest and appeal rights received dispositions in their favor, *i.e.,* the administrative protest and appeal process "worked." Likewise, the fact that several Plaintiffs failed to exercise their appeal rights does not render that system or the process invalid.

Further, to succeed on a claim for prospective relief against a state official, Plaintiffs must first prove that the state official's conduct

18

violated federal law.  The federal court may then award an injunction that governs that official's future conduct.  *Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974).  Second, Plaintiffs must prove that there exists a real and imminent danger of irreparable injury in the future.  *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *Lyons*, 461 U.S. at 101 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Here, Plaintiffs fail to establish that Defendants violated *any* federal law sufficient to support issuance of the requested vague, sweeping injunctive relief.  Plaintiffs offer nothing more than broad, general allegations that Defendants' policy, custom, or practice violates the federal constitution and the SSA.  Also, Plaintiffs fail to establish any irreparable injury.  These Plaintiffs had the full benefit of the entire appellate process available to them for any Agency adjudication.  Some took advantage of the opportunity and had the fraud determination overturned.  The failure of others to avail themselves of

19

the process resulted in final determinations by operation of law.  Thus,

Plaintiffs cannot meet the necessary elements for prospective relief.

## IV.   Plaintiffs lack standing to bring this lawsuit.

Standing "is the threshold question in every federal case." *Warth*

*v. Seldin*, 422 U.S. 490, 498 (1975).  Of particular relevance here, the

Supreme Court has cautioned that federal courts are not merely forums

to air public grievances:

> Were the federal courts merely publicly funded forums for
> the ventilation of public grievances or the refinement of
> jurisprudential understanding, the concept of "standing"
> would be quite unnecessary.  But the "cases and
> controversies" language of Art. III forecloses the conversion
> of courts of the United States into judicial versions of college
> debating forums.

*Valley Forge Christian College v. Americans United for Separation of*

*Church and State, Inc.*, 454 U.S. 464, 473 (1982).  Here, Plaintiffs invite

this Court to become exactly what the standing requirement is designed

to prevent: "a vehicle for the vindication of the value interests of

concerned bystanders."  *U.S. v. Students Challenging Regulatory*

*Agency Procedures,* 412 U.S. 669, 687 (1973).  Moreover, federal courts

should not "hospitably accept for adjudication claims of constitutional

violation by other branches of government where the claimant has not suffered cognizable injury." *Valley Forge*, 454 U.S. at 474.

Article III of the United States Constitution restricts the federal judicial power to the resolution of "Cases" and "Controversies." The case or controversy requirement is only satisfied where a claimant has proper standing. There are two components to evidence standing – constitutional and prudential. *Jewell v. United States*, 548 F.3d 1168, 1172 (8th Cir. 2008). To establish the constitutional minimum of standing, Plaintiffs must demonstrate the following:

> 1.    An injury in fact (*i.e.,* a concrete and particularized invasion of a legally protected interest);
>
> 2.    Causation (*i.e.,* a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and
>
> 3.    Redressability (*i.e.,* it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief the plaintiff seeks in bringing suit). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

## A.    Individual Plaintiffs lack standing

With regard to the individual Plaintiffs, four of the seven individual Plaintiffs (Saylor, Wessinger, Witt and Zynda) concede that their fraud determinations were reversed through appeal. (Complaint, ¶¶s 30, 36, 43, 46.) As a result, there is no injury wherein their claims

were adjudicated in their favor during the appellate process. They were not required to pay any restitution or penalty.

Two of the seven Plaintiffs (Grifka and Miller) allege they did not timely appeal. (Complaint, ¶¶ 21, 40.) As a result, the determinations finding that they committed fraud became final. They elected or failed to avail themselves of the appellate procedure. There is no causation between the monies owed to the Agency by these Plaintiffs and their claim that the fraud determinations are unconstitutional when they chose to concede to the Agency's finding. Regarding the remaining individual Plaintiff (Balma), she has not pled any injury as a result of the allegations contained within the Complaint.

## B.     Sugar Law and UAW lack standing

Sugar Law and the UAW also cannot establish an invasion of their legally protected interest under the traditional *Lujan* standard. Neither party can demonstrate any injury in fact. The MES Act was enacted to provide unemployment benefits to qualified and eligible claimants. Mich. Comp. Laws § 421.2. Based upon the Complaint alone, any alleged causation between denial of benefits to specific claimants and Sugar Law's "administrative burden" is tenuous, at best.

22

It is unclear how an entity created to provide legal services can be "damaged" by having to provide those services.  Also, any remedy provided in this lawsuit will not necessarily have any impact on Sugar Law's administrative costs or the number of claimants that elect to utilize Sugar Law's services.

The UAW has not alleged *any* injury.  The Complaint fails to assert that any of the Plaintiffs are UAW members and that any such member suffered an invasion of their legally protected interest.  *Lujan,* 504 U.S. at 560.  Without an identified member with an injury-in-fact, the UAW's position is nothing more than a "special interest" in avoiding a future problem that may never occur.  The Sixth Circuit Court of Appeals has announced "[c]ourts do not rule on hypothetical cases." *WJW-TV, Inc. v. City of Cleveland,* 870 F.2d 658, slip op. at 5 (6th Cir. 1989).  This is precisely what the UAW is asking this Court to do.

Even assuming, *arguendo,* Sugar Law and the UAW could establish the constitutional minimum of standing, there are also prudential limits on a court's ability to exercise jurisdiction.  *Lujan*, 504 U.S. at 560.  These limits include:

23

- that a person does not ordinarily have standing to assert the claims of third-parties, and

- a person must be intended to be included as a claimant under the statute conferring the cause of action.

*Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970). While Sugar Law and the UAW may participate as employers in the unemployment system, they are not, as organizations, claimants under the MES Act. Both Sugar Law and the UAW assert the rights of third parties – individuals who have filed claims or may file claims in the future under the MES Act.

Also, the MES Act does not convey Sugar Law or the UAW any of the rights to obtain unemployment benefits. The purpose of the MES Act is to alleviate "[e]conomic insecurity due to unemployment [which] is a serious menace to the health, morals, and *welfare of the people* of this state." Mich. Comp. Laws § 421.2 (emphasis added.) Neither the Sugar Law nor the UAW allege a violation of their own rights and interests under MES Act, but instead rely upon the rights and interests of individuals who applied for benefits under the MES Act—the rights of third parties.

Based upon the foregoing, Sugar Law and the UAW lack both constitutional and prudential standing to bring this Complaint and should be dismissed as parties.

## C.    UAW lacks associational standing

Any claim that the UAW has associational standing must likewise fail.  The UAW asserts that it brings the lawsuit to protect the rights of "its *claimant members* and to advance the interest of *other claimants* through the litigation of this case."  (Complaint, ¶54 emphasis added). In essence, the UAW seeks to represent unidentified members and future claimants that may or may not be entitled to unemployment benefits at some unknown time in the future.

An association has standing to bring suit on behalf of its members when (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).  An association cannot maintain associational standing for

non-association members.  *Nestle Ice Cream Co. v. NLRB*, 46 F.3d 578, 586 (6th Cir. 1995).

The UAW cannot satisfy the first and third prongs of the associational standing requirements.  Relative to the first prong, the members would not have standing to sue in their own right for the reasons delineated in Sections III and IV of this brief (sovereign immunity and the state is not a sueable person under § 1983).  In addition, as outlined hereafter, the individual Plaintiffs lack standing due to suffering no injury in fact and a lack of causation.

Relative to the third prong for associational standing, the claim and relief requested *does require* the participation of individual members in the lawsuit.  The entire basis of Plaintiffs' Complaint is the Agency's eligibility determinations process for unemployment benefits – specifically, the process for reaching fraud determinations.  While Plaintiffs make broad sweeping assertions regarding how benefit determinations are made, this case involves particularized decisions on individual claimants' fraud determinations.  In fact, the Plaintiffs acknowledge the fact that the individual claims are at issue through their request for relief that the Court require Defendants to "[r]eopen

26

the unemployment case file of any claimant who was accused of and/or robo-adjudicated as fraud by the Agency's automated system and provide each claimant with an individualized review of their case." (Complaint ¶D, p. 27).

Thus, none of the Plaintiffs have standing to bring this lawsuit and the Complaint must be dismissed.

## V.    The Court should abstain from review of the State's unemployment insurance program

The Sixth Circuit has enunciated two factors that justify abstention under *Burford v. Sun Oil Corp*, 310 U.S. 315 (1943): (1) the presence of a complex state regulatory scheme which would be disrupted by federal review; or (2) the existence of a state-created forum with specialized competence in the particular area. *Ada-Cascade Watch Co. v. Cascade Resource Recovery, Inc.*, 720 F.2d 897, 903 (6th Cir. 1983). The Supreme Court explained that *Burford* abstention is appropriate where timely and adequate state court review is available and (1) a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (2) the "exercise of federal review of

27

the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Service, Inc. (NOPSI) v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (quotation omitted).

The Federal government has given the administration of unemployment insurance benefits over to the states upon certification of the program.  26 U.S.C. § 3304.  The MES Act creates a complex state regulatory scheme over which adequate Michigan judicial review is available as outlined.  This case involves the State's procedures for the detection of fraud.  Continued operation free of federal interference is essential to ensuring fraudulent claims are identified and pursued.  Interference from the federal court in the State's ability to implement fraud detection procedures would be disruptive of state efforts to minimize fraud.  It would jeopardize the stability of the process and the authority of this statutorily mandated process.  In short, this Court should abstain under *Burford*.

## VI.  Plaintiffs' constitutional claims fail to state a claim upon which relief can be granted.

### A.  Plaintiffs' self-incrimination claims fail because mandatory state reporting requirements do not violate the Fifth Amendment and the MES Act contains an immunity provision.

None of the Plaintiffs have alleged that they have been referred to county prosecutors for criminal charges.  Instead, the Agency seeks restitution of benefits paid and civil penalties pursuant to Mich. Comp. Laws §§ 421.54 and 421.62.  Yet, Plaintiffs allege that the Agency's written fact-finding questionnaires, which are designed to determine if the claimant is attempting to fraudulently obtain benefits, contain self-incriminating questions.  Plaintiffs claim that their right against self-incrimination is violated if a fraud determination is made where a claimant fails or refuses to answer the inquiry to determine eligibility for benefits.

In order to obtain benefits, a claimant must provide eligibility information to the Agency.  However, "the Fifth Amendment privilege against self-incrimination is not violated by information required to be furnished under State mandatory self-reporting systems which are essential to the fulfillment of a regulatory statute where (1) the

29

information is facially neutral; (2) the information required is directed at the public at large and not to a selective group inherently suspect of criminal activities; (3) the area of inquiry is essentially noncriminal and regulatory and not permeated with criminal statutes; and (4) the possibility of incrimination is not substantial." *State ex rel. Osburn v. Cole*, 173 W. Va. 596, 602 (1983). While *Osburn* is a West Virginia case, it is directly on point as it involved an unemployment claimant who was asked questions about her employment, and she refused to answer claiming self-incrimination. In *Osburn*, the court noted that while there are criminal penalties for fraud, the "system is hardly permeated with criminal statutes." *Osburn,* 173 W. Va. at 601. As a result, an unemployment claimant is not in a situation wherein they are being exposed to criminal penalties for the failure to respond. *Osburn*, 173 W. Va. at 601.

Further, even if applicable, while the Fifth Amendment permits an individual to refuse to answer questions that might result in incriminating themselves, "it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production." *United States v. Rylander*, 460 U.S. 752, 758 (1983).

30

Individuals claiming unemployment benefits must demonstrate their eligibility. Claimants cannot claim the Fifth Amendment to avoid providing necessary evidence to establish eligibility and qualification to receive benefits, and then expect to continue to receive benefits where they have failed to meet their burden.

Plaintiffs suggest that fraud determinations should not be made based upon a claimant's failure to return the Agency questionnaire. (Complaint, ¶ 22.) To reinforce non-response to the questionnaire would result in widespread withholding of information by claimants, and the Agency would be prevented from finding fraud based upon non-response. Thus, such a ruling would broadcast to the public that one may evade repercussions from committing fraud by simply refusing to turn in the questionnaire, and the Agency is thereby prevented from issuing a fraud determination. Such action requested by Plaintiffs would perpetuate widespread fraud and would disregard the doctrine of "silent fraud" that is well-recognized in Michigan. *M&D, Inc. v. McConkey*, 231 Mich. App. 22, 25; 585 N.W.2d 33 (1998). Silent fraud is known as fraud by nondisclosure or fraudulent concealment. The "suppression of a material fact, which a party in good faith is duty-

31

bound to disclose, is equivalent to a false representation and will support an action in fraud." *M&D, Inc.,* 231 Mich. App. at 28-29. Thus, it is contrary to law and basic public policy concerns.

Further, Defendants are not aware of any individual claimant who has asserted a Fifth Amendment right against self-incrimination when responding to written requests for information, nor do Plaintiffs allege that any of the individual claimants actually asserted their Fifth Amendment right in the questionnaire process.

Even if this Court found the questionnaire to contain self-incriminating questions, it is the claimants' obligation to assert their Fifth Amendment rights. Miranda warnings only need to be provided in custodial interrogations. *Miranda v. Ariz.*, 384 U.S. 436, 463 (1966). Filling out a questionnaire does not rise to the level of a custodial interrogation. See *State v. Rivers*, 146 P.3d 999, 1003 (Alaska Ct. App. 2006) (finding that an unemployment claimant's interview with Division of Employment Security investigator was not a custodial interrogation).

Also, the possibility for incrimination is non-existent where the MES Act § 421.9 contains an immunity provision which provides that

"no person shall be prosecuted or subjected to any criminal penalty for, or on account of, any transaction made or thing concerning which he is compelled, upon claiming the privilege to testify."  The Supreme Court has held that a grant of "immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege." *Kastigar v. United States*, 406 U.S. 441, 453 (1972).

Thus, Plaintiffs fail to state a claim under the Fifth Amendment wherein the questions were part of a benefit determination system, where they failed to plead the Fifth Amendment, and where the MES Act provides immunity.

**B.    The fraud penalty is not an excessive fine under the federal or state constitutions because the amount is set by the MES Act and protects the integrity of the unemployment system.**

### 1.    United States Constitution claim

The Excessive Fines Clause of the Eighth Amendment to the U. S. Constitution prohibits the federal government from imposing excessive fines.  To be excessive, the amount of the fine must be disproportionate to the gravity of the offense.  *U. S. v. Droganes,* 728 F.3d 580, 591 (6th

Cir. 2013) (citing *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998)).

However, the Supreme Court has never specifically announced that the

federal Excessive Fines Clause applies to the states. *Browning-Ferris*

*Indus. v. Kelco Diosposal,* 492 U.S. 257, 259 n. 22 (1989). See also,

*Emmet County Prosecuting Atty. v. Two Thousand Two Hundred*

*Dollars in U.S. Currency (In re Forfeiture of 5118 Indian Garden Rd.),*

253 Mich. App. 255, 258; 654 N.W.2d 646 (2002)(Michigan Court of

Appeals declined to address the grant of summary disposition regarding

excessive fines, brought under the U.S. Constitution).

Even if the federal Excessive Fines Clause can be applied, its

application is very limited and demands a showing that the civil fine is

"so severe and oppressive as to be wholly disproportioned to the offense

and obviously unreasonable." *Browning-Ferris Industries of Vermont,*

*Inc.,* 492 U.S. at 281 (quoting *St. Louis, I. M. & S. R. Co. v Williams,*

251 U.S. 63, 66-67 (1919)). Historically, money penalties are free of the

"punitive criminal element." *Hudson v U.S.,* 522 U.S. 93, 104 (1997)

("the payment of fixed or variable sums of money [is a] sanction which

ha[s] been recognized as enforceable by civil proceedings since the

original revenue of law of 1789,") (quoting *Helvering v. Mitchell*, 303

34

U.S. 391, 400 (1938)).  Also, the mere fact that money penalties will deter others from similar conduct, a traditional goal of criminal punishment, does not render a penalty criminal.  *Hudson*, 522 U.S. at 105.  Thus, Plaintiffs' conclusory statement that "the quintuple penalty provision in the MES Act constitutes a criminal penalty" (Complaint, ¶ 99) is simply not supported by law.

In forfeiture cases, the Supreme Court analyzed the specific language of the statute imposing the penalty.  *U.S. v. Bajakajian*, 524 U.S. 321 at 322-23 (1998).  Likewise, in a case challenging the imposition of a civil penalty under the False Claims Amendments Act of 1986, Pub. L. 99-562, 100 Stat. 3153 (1986), this Court began its analysis by reading the Act's legislative history.  *U.S. ex. rel. Smith v. Gilbert Realty Co., Inc.,* 840 F. Supp. 71, 74 (E.D. Mich. 1993).  In *Smith*, defendant violated the False Claims Act 58 times by making 7 false statements to the local housing authority and improperly endorsing 51 checks.  *Id*. at 72.  The Federal Claims Act provides that one who "knowingly presents . . . a false or fraudulent claim for payment . . . is liable to the United States Government for a civil penalty not less than $5,000."  *Id*.  In reviewing the Act's history, this

Court noted the comment of the initial drafters that "defrauding the Government is serious enough to warrant an automatic forfeiture rather than leaving fine determinations with district courts." *Id*. at 72-73. Thus, this Court determined that it was unlikely that the intent of the drafters was to impose the $5,000 penalty on the person (a one-time fine) as opposed to a $5,000 penalty per incident. *Id*. at 73.

In deciding whether the penalty was excessive under the Eighth Amendment, this Court noted that in lieu of simply adopting a mathematical test to determine if the penalty was excessive, the court would examine "the nature of the conduct." *Id*. at 74-75. The conduct included defendant making seven certifications directly to the housing authority that were "false claims in every sense of the word." *Id*. at 75. This Court found that these seven acts clearly warranted penalties of $5,000 apiece for a total penalty of $35,000. *Id*. (The penalty for endorsing the 51 rent checks was found to be excessive because those acts were simply the result of a contract with the housing authority.) The U. S. Supreme Court has struck fines as excessive where there is no fraud on the Government and no loss to the public. See *Bajakajian*, 524 U.S. at 323.

36

Here, the DOL mandates that the Agency impose a penalty where it finds fraud in obtaining benefits and the MES Act authorizes a penalty of equal to four times the amount of improperly paid benefits. Plaintiffs simply suggest that the Agency's penalties are excessive because affected claimants have no source of income with which to pay and they believe that the amount "go[es] well beyond the amount necessary to make the state whole and maintain the integrity of the UI trust fund." (Plaintiffs' Complaint, ¶ 102.) But, Plaintiffs' generalized belief does not render the penalty excessive.

More importantly, the DOL has mandated that states make payment integrity their top priority and continue to develop strategies to prevent improper payments. (Attachment C.) From July 2013 to June 2014, Michigan's Unemployment Insurance overpayment amount was $165,403,726.00. (Attachment B – IPIA 2014 Unemployment Insurance Integrity Rates from 7/1/13 through 6/30/14).

## 2.    Michigan State Constitution claim

The fines imposed for fraudulently obtaining unemployment benefits are set by statute. The MES Act provides that if a claimant fraudulently obtains less than $500.00 in benefits, the Agency can

recover "damages *equal to 2 times that amount*." Mich. Comp. Laws §
421.54(b)(i). If a claimant fraudulent obtains $500.00 or more in
benefits, "*the unemployment agency shall attempt to recover the amount
obtained as a result of the knowing false statement or representation or
the knowing and willful failure to disclose a material fact and may also
recover damages equal to 4 times that amount*." Mich. Comp. Laws §
421.54(b)(ii) (Emphasis added).

Plaintiffs argue the Defendants are "automatically assessing the
maximum penalty." (Complaint, p. 4.) However, the MES Act provides
the Agency with the discretion of whether to seek penalties after
determining benefits were fraudulently obtained, but it has no
discretion as to the amount of the penalty. Mich. Comp. Laws §
421.54(b). Indeed, the MES Act provides that penalties for obtaining
fraudulent benefits over $500.00 is "equal to 4 times" the amount
fraudulently received—not "up to 4 times" the amount fraudulently
received.

In *Director, Bureau of Workers' Disability Compensation v. BMC
Mfg., Inc.,* 200 Mich. App. 478, 484; 504 N.W.2d 695 (1993), the Bureau
Director brought a claim against an employer who failed to maintain

statutorily required workers compensation coverage.  On appeal, the Director argued the trial court failed to impose a $342,000 fine ($1,000 per day of violation).  *Id.* at 483.  The statute provided that a violation "shall" result in a fine, or specific jail time, or both.  *Id.* at 485.  The Court of Appeals noted that since there was a fine or jail time, the fine was not mandatory – but that if a fine was awarded, it would have to be for the statutory amount.  *Id.*

## C.   The search and seizure provision of the U.S. Constitution does not apply to civil attachments.

Michigan's unemployment system is funded through various means, including employer contributions, employee contributions, collection of fines, penalties and interest, etc.  Mich. Comp. Laws §§ 421.26 and 421.54.  The Agency is statutorily obligated to protect the trust fund to ensure eligible and non-disqualified claimants can receive unemployment benefits.  Plaintiffs allege the Agency's collection procedures involving reduction of future benefits, interception of state and federal tax returns, and future wage garnishment results in a deprivation of property without a warrant and constitute an improper search and seizure.  (Complaint, ¶105.)

39

The Fourth Amendment of the U.S. Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause."  U.S. Const. amend IV.  Based upon the language of the amendment, not all searches and seizures violate the Fourth Amendment, only *unreasonable* searches and seizures.

The Michigan Legislature vested the Agency with the authority to collect restitution and penalties.  The MES Act provides that the Agency can obtain improperly paid benefits by deduction from benefits or wages, payment by the claimant in cash, deduction from a tax refund, levy of a bank account, wage assignment, administrative wage garnishment.  Mich. Comp. Laws §§ 421.62, 421.15(m) and (n).  This is analogous to tax collection matters wherein Congress provided the IRS with statutory authority to collect taxes.  *United States v. Nat'l Bank of Commerce*, 472 U.S. 713 (1985).  See also *Camden County Beverage Co. v. Blair*, 46 F.2d 648, 651 (D.N.J. 1930), ("The protection against unreasonable search and seizure does not apply to searches and

40

seizures under statutes providing for the collection of the public revenue.").

Plaintiffs have provided no support for their allegation that the Fourth Amendment applies to civil penalties.  Based upon the fact that the penalties are reasonable, were set by the Michigan Legislature, and the Agency was given statutory authority to collect restitution and fraud penalties, Plaintiffs' search and seizure claims should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## VII. The Social Security Act authorizes no private right of action.

The SSA does not provide a private right of action available to Plaintiffs.  Plaintiffs allege they are entitled to a fair hearing and to be paid benefits when due pursuant to the SSA.  However, the SSA is designed to advise state agencies regarding funding and requirements to obtain same.  In *Hughlett v. Romer-Sensky*, 497 F.3d 557, 564 (6th Cir. 2006), Plaintiffs alleged that their constitutional due process rights were violated when their foster care child support payments from the state were not disbursed within two days and were subjected to an

administrative cost in violation of the SSA.  The Court found that

Congress did not create an enforceable individual right, and the

provisions of the SSA "were intended to be instructive to state

agencies." *Id.* at 562.  To determine whether individual rights were

created, the court utilized the three step approach in *Blessing v*

*Freestone*, 520 U.S. 329, 340 (1997):

> 1. Congress must have intended that the provision in question benefit the Plaintiff.
>
> 2. Plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence.
>
> 3. The statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory terms.

The Supreme Court held it is not enough for a plaintiff to fall "within

the general zone of interest that the statute is intended to protect."

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).

The SSA provisions entitled the Secretary of Health and Human

Services to perform a review of state agencies to determine compliance

with the SSA, and, if not met, to reduce funding.  *Hughlett,* 497 F.3d at

564.  Similarly, 42 U.S.C. § 503(a)(3) provides that the "Secretary of

42

Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act . . . includes" a fair hearing and payment when due.  Here, similar to *Hughlett*, this provision is a mechanism for the federal government to ensure state agencies comply with their requirements to obtain state funding – it is *not designed to create a private right of action.*

Given that the SSA is spending legislation that does not unambiguously confer an enforceable right upon unemployment claimants, this claim should be dismissed.

## VIII. Declaratory Relief is unavailable under the Declaratory Judgment Act.

Declaratory judgments are discretionary tools utilized by the courts to declare the rights of litigants and an alternative to pursuit of arguably illegal activity.  *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 129 (2007).  In this matter, an award of declaratory relief is also improper under the Declaratory Judgment Act.  28 U.S.C. § 2201; *Public Service Comm. of Utah v. Wycoff*, 344 U.S. 237, 241 (1952).  The granting of a declaratory judgment rests in the discretion of the court.

43

*Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir. 1984).

In determining how to exercise that discretion, the court should consider:

> 1. whether the declaratory action would settle the controversy;
>
> 2. whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> 3. whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
> 4. whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and,
>
> 5. whether there is a better or more effective alternative remedy.

*Grand Trunk*, 746 F.2d at 326 (citation omitted).  These factors counsel against granting declaratory relief.  As to the first and second factors, a declaratory judgment would not settle this controversy or clarify the legal relations at issue.  Relative to the individual Plaintiffs, the Agency's fraud determinations have already been issued and, in some cases, reversed.  A declaratory judgment that the Plaintiffs' "constitutional and statutory rights" were violated does not provide

44

Defendants with any information that would change the manner in which the fraud determinations were made.

Further, in applying the fourth factor, a significant consideration is whether there is a close nexus between underlying factual and legal issues and state law or public policy. *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 559-60 (6th Cir. 2008). Outside of the broad requirements of the SSA to obtain funding, the states were responsible for enacting their own unemployment system. Michigan enacted, regulates and enforces the MES Act. Any declaratory judgment would increase the friction between the federal and state courts relative to the unemployment system. The Plaintiffs had available the entire Michigan appellate process to challenge their fraud determination. Instead, they are asking a federal court to regulate Michigan's process for fraud detection.

## CONCLUSION AND RELIEF REQUESTED

Defendants respectfully request that this Honorable Court enter an order dismissing Plaintiffs' Complaint as this Court lacks subject matter jurisdiction and because the Plaintiffs have failed to state a claim upon which relief can be granted.

45

Respectfully submitted,

BILL SCHUETTE
Attorney General

*/s/ Kimberly K. Pendrick*
Kimberly K. Pendrick
Peter T. Kotula (P41629)
Shannon W. Husband (P60352)
Assistant Attorneys General
Attorneys for Defendants
Labor Division
3030 W. Grand Blvd., Ste. 9-600
Detroit, Michigan  48202
(313) 465-2200
pendrickk@michigan.gov
P60348

Dated:  July 10, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2015, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ Kimberly K. Pendrick
Assistant Attorney General
Attorney for Defendants
Labor Division
3030 W. Grand Blvd., Ste. 9-600
Detroit, MI  48202
(313) 456-2200
pendrickk@michigan.gov
P60348