UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE & JANE SUGAR LAW
CENTER FOR ECONOMIC &
SOCIAL JUSTICE,

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW),
*et al*

   Plaintiffs,

v.

STEVE ARWOOD and SHARON
MOFFETT-MASSEY, in their official
capacities

   Defendants.

Case No. 2:15-cv-11449

Hon. Robert H. Cleland

**STIPULATED ORDER
OF DISMISSAL**

_____

| | |
|---|---|
| David M. Blanchard (P67190) | Kimberly K. Pendrick (P60348) |
| Daniel Tai (P76798) | Peter T. Kotula (P41629) |
| BLANCHARD & WALKER, PLLC | Shannon W. Husband (P60352) |
| Attorneys for Plaintiffs | Assistant Attorney General |
| 221 N. Main Street, Ste. 300 | Attorney for Defendants |
| Ann Arbor, MI 48104 | Labor Division |
| | 3030 W. Grand Blvd., Ste. 9-600 |
| Ava Barbour (P70881) | Detroit, MI 48202 |
| Edward A. Macey (P72939) | |
| Associate General Counsel | |
| International Union, UAW | |
| Attorneys for UAW only | |
| 8000 East Jefferson Avenue | |
| Detroit, MI 48214 | |

## STIPULATED ORDER OF DISMISSAL

By consent and stipulation of the parties it is HEREBY ORDERED that:

1. This matter is dismissed on the terms of the attached Settlement Agreement; and,

2. Collection activity stayed under the stipulated Preliminary Injunction Order will continue: all collection activity against claimants who have been subject to fraud (re)determinations (and associated underlying eligibility or disqualification (re)determinations) issued by the Agency beginning October 1, 2013, to August 7, 2015, is stayed, unless and until individually reviewed by agency staff and affirmed with new notice to claimant; and,

3. The Court shall retain jurisdiction of this matter pursuant to the terms of the Settlement Agreement and for the purpose of enforcing the terms of this Order and the Settlement Agreement; and,

4. Plaintiffs shall be entitled to reimbursement of reasonable fees and costs incurred in the prosecution of this matter as agreed by the parties.

                                            IT IS SO ORDERED

Dated: February 2, 2017           s/Robert H. Cleland
                                          ROBERT H. CLELAND
                                          UNITED STATES DISTRICT JUDGE

## **STIPULATION**

The parties, by and through their respective attorneys, stipulate to the entry of this order.

Respectfully submitted,

| | |
|---|---|
| /s/ David M. Blanchard | /s/ Kimberly K. Pendrick |
| David M. Blanchard (P67190) | Kimberly K. Pendrick (P60348) |
| Daniel C. Tai (P76798) | Peter T. Kotula (P41629) |
| BLANCHARD & WALKER, PLLC | Shannon W. Husband (P60352) |
| Attorneys for Plaintiffs | Assistant Attorney General |
| 221 N. Main Street, Ste. 300 | Attorney for Defendants |
| Ann Arbor, MI 48104 | Labor Division |
| | 3030 W. Grand Blvd., Ste. 9-600 |
| Date: January 31, 2017 | Detroit, MI 48202 |
| | |
| | Date: January 31, 2017 |

/s/ Edward A. Macey
Ava Barbour (P70881)
Edward A. Macey (P72939)
Associate General Counsel
International Union, UAW
Attorneys for UAW only
8000 East Jefferson Avenue
Detroit, MI 48214

Date: January 31, 2017

_____

## Settlement Agreement

THIS SETTLEMENT AGREEMENT (hereinafter referred to as "Agreement"), is made and entered into this 31 day of January, 2017, by and between International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW); and Maurice & Jane Sugar Law Center for Economic & Social Justice, and individual claimants Jennifer Zynda; Amanda Balma; Kevin Grifka; Jordan Miller; Brian Saylor; Nancy Wessinger; and Michelle Witt (hereinafter referred to as "Plaintiffs") and the Talent Investment Agency/Unemployment Insurance Agency, Steve Arwood and Sharon Moffett-Massey (hereinafter referred to as "Defendants").

WHEREAS, Plaintiffs filed a civil action in this Court on April 21, 2015, originally titled Zynda *et al.* v. Zimmer *et al.*, 15- CV-11449 (*the "Litigation" or "Action"*).

WHEREAS, the Agency has undertaken a review of all remaining Unemployment Insurance Agency ("UIA") fraud determinations and redeterminations (collectively referred to herein as "(re)determinations") and associated eligibility (re)determinations issued from October 1, 2013, to August 7, 2015 that have not yet had a hearing before the Michigan Administrative Hearing System, which will include issuance of (re)determinations on reversals and notices of appeal rights on affirmations; and

WHEREAS, the Agency has committed to make all reasonable efforts to complete the review within six months of the execution of this Agreement; and

WHEREAS, this Agreement sets forth the full and final terms by which Plaintiffs and Defendants settle and resolve all claims that have been raised in the Litigation.

IT IS HEREBY AGREED that:

1. The Litigation will be dismissed based upon entry of an Order of Dismissal incorporating the terms of this Settlement Agreement and on the mutual agreement of the parties and the obligations and affirmations contained herein;

2. Defendants admit no wrongdoing or that any of the Talent Investment Agency/Unemployment Insurance Agency's (Agency) policies or procedures violate any Federal or State Constitutional provisions or laws.

3. The Defendants hereby specifically affirm Agency compliance with the following policies and practices regarding identification of overpayments and/or imposition of penalties or, to the extent necessary, to adopt or revise policies. The Agency shall bring its policies and practices in compliance within 90 days of this Settlement Agreement.

*Section I.*

*REVISED OR AFFIRMED UIA POLICIES AND PRACTICES*

4. The Agency will conduct an investigation consistent with prevailing U.S. Department of Labor requirements, including ETA Handbooks and Unemployment Insurance Program Letters as interpreted by the U.S. Department of Labor, before issuing a (re)determination that an overpayment has been made or intentional misrepresentation has occurred. In so doing, the Agency will take reasonable actions to ensure that investigators gather all relevant information, which may include supporting documents and statements from either the individual to whom the payment was made or others. In addition, claimants will be given an opportunity to be heard, timely notice of the interview or fact-finding questionnaire, and an opportunity to present evidence.

5. When there is a factual conflict between the information received from an individual claimant and other information received by the Agency regarding overpayment or potential misrepresentation, Agency staff will make reasonable attempts (as defined by the U.S. Department of Labor) to contact the individual, inform him or her of the conflict, and allow an opportunity for rebuttal. The Agency will establish policies and procedures to determine that the conflicting information appears valid and relevant to its (re)determination prior to contacting the individual and requesting additional information. For purposes of paragraphs 1 or 2 of this section, the following practices shall satisfy the terms of the agreement:

   a. The Agency's procedures require attempts to obtain information from the claimant, the employer, or third-parties regarding overpayment and misrepresentation issues;
   b. The Agency will issue (re)determinations of intentional misrepresentation based upon staff review of all evidence obtained during the investigation;
   c. The Agency will not make fraud (re)determinations solely based upon a lack of response by the claimant;

      d. A manager will review all intentional misrepresentation (re)determinations to verify that they contain sufficient facts in support of the finding;

      e. The Agency will establish policies and procedures to determine whether conflicting information appears valid and relevant to its (re)determination prior to contacting the claimant and requesting additional information; and,

      f. Claimants that fail to respond to fact-finding will receive a 48-hour call before a fraud (re)determination is issued.

6. All (re)determinations of misrepresentation or fraud will be issued only after the input and review by Agency staff, and after the claimant is informed of the conflicting information and provided an opportunity to respond.

      a. When reviewing a data conflict concerning reason(s) for separation, both the claimant and employer will receive fraud fact-finding questionnaires for fraud assessment purposes. Equal deference will be given to statements by the employer and the claimant absent further investigation by the Agency. This will apply to any new claims 90 days after the effective date, which will be the date the Order of Dismissal and this Agreement are filed and entered by the Court.

      b. Claimants who fail to respond to fact-finding will receive a 48-hour call before a fraud (re)determination is issued.

      c. The Agency will not make fraud (re)determinations solely based on a lack of response by the claimant.

      d. All timely information submitted by a claimant will be considered prior to a (re)determination being issued.

7. When an employer reports wages earned for an employee within a benefit quarter, the Agency will not assume that wages are compensation attributable to any specific benefit weeks throughout the quarter unless the employer or claimant designates the weeks for which it is attributing pay. If the employer so designates, the designation shall be subject to review by the Agency, and the claimant will be notified by phone call of the weeks designated and provided an opportunity to respond.

8. Communications will be in plain language and using methods that ensure the communication is most likely to be successful for all populations, including individuals with limited English proficiency.

9. Regardless of claimant's election to receive electronic notices or "go green,"

Page 3

after the end of the claimant's benefit year, claimants accused of receiving overpayments or of intentional misrepresentation shall receive written notice by mail of the (re)determination at the last known address. Written notice will include: a) a summary statement of the material facts on which the (re)determination is based; b) the reason for allowing or denying benefits; and c) the penalties that will be collected or consequences associated with the (re)determination if it is not appealed and it becomes final.

10. Written notice will also provide a statement of appeal rights that includes the claimant's right to appeal, protest, or to request a redetermination; the period in which the appeal, protest, or request for redetermination must be filed; the manner in which it must be filed; and where the claimant can obtain additional information and assistance about filing an appeal, protest, or request for redetermination.

11. All fraud (re)determinations and notices of restitution due will be reasonably designed to allow the claimant to understand the reasons for the (re)determination, potential penalties or other consequences of a fraud (re)determination, as well as his or her rights with respect to an appeal. The claimant shall be provided information about the appeal process including the right to have representation; to present testimony and other evidence relative to the appeal; to subpoena witnesses and records; and to be apprised of the penalties to be assessed if it is not appealed and a (re)determination becomes final, and of the consequences of failing to attend an appeal if one is requested. For purposes of this paragraph, inclusion of the following in fraud (re)determinations and notices of restitution due shall satisfy the terms of the agreement:

    a. A summary statement of the reason for denying benefits, including the facts on which the (re)determination is based (for (re)determinations only, but not notices of restitution due);
    b. The claimant's right to protest or appeal a (re)determination;
    c. The period and manner in which the appeal, protest, or request for redetermination must be filed, and information regarding where the claimant can obtain additional information and assistance regarding filing an appeal, protest, or request for redetermination;
    d. The potential penalties or other consequences of a fraud (re)determination;
    e. The claimant's ability to hire an attorney to represent them at any stage of the administrative process;

Page 4

  f. The claimant's ability to use the advocacy program;
  g. That the claimant can have a hearing to present testimony and other evidence and to subpoena witnesses and records; and
  h. That failure to attend an administrative hearing may result in dismissal.

Relative to any (re)determinations issued after implementation of any change of policy or procedure pursuant to this Agreement, the Agency will not initiate or continue overpayment recovery or imposition of penalties, whether by garnishment, bill collection, offset against current eligibility, or other means unless and until the above policies and procedures have been adhered to.

12. The Agency will refer those who are denied advocacy through the Advocacy Program due to fraud to the State Bar referral service Legal Aid Section, which maintains an "unemployment" subsection.

13. The Agency shall not initiate or continue recovery of an overpayment or penalty until a (re)determination of the overpayment becomes final after the claimant has had notice and reasonable opportunity to challenge the (re)determination and/or exhaust all appeals.

14. During the pendency of a decision on any overpayment or misrepresentation (re)determination, the Agency will continue to make timely UC payments when due and shall not make any attempts to collect restitution while an appeal is pending, and shall not begin collection of restitution or penalties until or after 35 days from the date of a (re)determination.

15. Good cause for a late protest will continue to include the situation wherein a claimant fails to receive a reasonable and timely notice, order, or decision, as set forth in Mich. Admin. Rule § 421.270. The Agency will make good cause determinations on a case-by-case basis based upon the information submitted.

16. In cases where jurisdiction is returned to the Agency for reconsideration and redetermination under Mich. Admin. Rule § 421.270 the Agency will suspend collection activity of overpayment and/or penalties on that case(s), whether by garnishment, bill collection, offset against current eligibility, or otherwise, until a (re)determination on the case(s) has become final.

*Section II.*

*CURRENT CLAIMANTS, GARNISHEES, AND OTHERS FOR WHOM THE STATE RETAINS REMUNERATION BASED ON CHALLENGED PRACTICES*

17. Review of Agency (re)determinations issued from October 1, 2013 to August 7, 2015, will be followed by new original (re)determinations by mail which shall be subject to the policies, procedures or practices outlined above, or "notices of appeal rights" which shall include explanation of the basis for upholding the original (re)determination and a copy of the original (re)determination. Relative to this review, funds garnished or otherwise collected shall be promptly returned within 30 days of a new (re)determination.[1]

18. For all claimants with open garnishment or other collection activity, all bills and garnishment notices shall provide a statement advising claimants that they may have: (1) a right to request reopening if they did not receive notice of the (re)determination within the original appeal deadline, and (2) the right to an individual hearing on the underlying issue(s).

19. If the Agency rejects a request to reopen for good cause on the basis that the original (re)determination is more than a year old (MCL 421.32a(2) -- i.e. the "one-year letter" – currently UIA form 1077) it shall also include in the second paragraph of the main text of the "one year letter" information advising that, although the UIA is limited by a one year deadline: "However, if you file a protest or appeal of this denial, an Administrative Law Judge may reconsider the disputed issue after a year in some circumstances, and may grant your request if you did not receive notice of the original (re)determination or you establish good cause for late filing."

---

[1] The parties understand that, in certain extenuating circumstances, it may be impossible to meet this deadline. Examples of extenuating circumstances include those cases where involvement of third parties -- such as employer garnishments or taxing authorities regarding interception -- limits or delays access to the funds, or cases in which return addresses must be verified or claimants located. In those cases the Agency shall endeavor to return collected funds as soon as practicable.

*Section III.*

*GENERAL SETTLEMENT TERMS*

20. <u>Reporting.</u> (1) For a period extending 24 months from the entry of this Settlement Agreement (the "reporting period"), the Agency will provide to Plaintiffs' counsel a quarterly report, one month following the calendar quarter end, of the number of new fraud and nonfraud overpayment cases established based on new misrepresentation (re)determinations. (2) Quarterly, until completion of the review of cases subject to *Section II* of this Agreement, the Agency will provide information regarding the number of cases reviewed, the number of affirmations and reversals of fraud, the percentage of cases where refunds were issued on fraud penalties previously paid and the amounts thereof.

21. <u>Jurisdiction</u>:  The Federal District Court for the Eastern District of Michigan shall retain jurisdiction over this action.  The Parties consent to continued jurisdiction of this Court over interpretation of the terms, enforcement, and compliance with this Settlement Agreement.

22. <u>Implementation:</u> Within 90 days of the execution of this Agreement, the Defendant shall issue written directives to all applicable personnel within the Michigan Unemployment Insurance Agency clarifying its recovery procedures for overpayments of unemployment insurance benefits as provided in this Agreement. As soon thereafter as is practicable, but in no event more than 90 days of the execution of this Agreement, the Defendant shall issue revised manual sections for its policy and procedures manual(s) consistent with the terms of this Settlement Agreement. The Defendants will provide Plaintiffs' counsel with a courtesy copy of the written directives issued pursuant to this Settlement Agreement at the time they are issued and an advance copy of the revised manual sections provided for under this paragraph no less than 15 days prior to their publication/distribution.

23. <u>Notice and opportunity to cure/Liaison</u>.  If Plaintiffs believe any Agency policy, practices, or actions are not in compliance with this Settlement Agreement, Plaintiffs shall give the Agency written notice of such alleged breach providing the opportunity to cure such breach for a period of thirty (30) business days after delivery of the notice.  Within 10 days of notice, Defendants shall provide a response (written, by phone, or in person) of the actions proposed in response, if any. Any notice of breach shall be made to the following:

        Talent Investment Agency/Unemployment Ins. Agency
        Attn: UIA Deputy Director
        Cadillac Place
        3024 West Grand Blvd., Ste. 12-350
        Detroit, Michigan 48202

The Agency will provide notice and copies of revised UIA forms[2] at least 60 days (or as soon as practicable) prior to the proposed implementation. Any objection to the content of proposed UIA form revisions for compliance with this agreement must be raised within 30 days (or as soon as practicable) after receipt. Suggested and accepted changes will be made on a prospective basis.

A Liaison for issues related to implementation of this Settlement Agreement and compliance shall be appointed within the Agency. The Agency may designate substitutions of the liaison by notice pursuant to the terms of this Agreement. The liaison is the UIA Deputy Director, and his or her designee, at a phone number and email to be provided by Defendants.

24. <u>Settlement Incorporated.</u> Parties Agree to the Entry of this Settlement Agreement to be incorporated by reference in a Dismissal Order of the Litigation as final Resolution of the Litigation. If the Court rejects this Agreement in any material part, either party shall have the right to void this entire Agreement.

25. <u>Release.</u> Except for the rights and obligations contained in this Agreement, Plaintiffs, including their officers, directors, managers, employees, agents, insurers, parent corporations, subsidiaries, affiliates (but not local chapters which the UAW has no authority to bind), predecessors, successors, assigns, hereby fully and forever release and discharge Defendants and its employees, attorneys, agents, representatives, insurers, predecessors, successors, and assign, from any and all manner of action and causes of action set forth in the pending litigation.

---

[2] UIA forms requiring notice pursuant to this provision are limited to claimant (re)determinations, restitution notices, questionnaires related to claimant benefits and/or fraud, monthly invoices to claimants, and the one-year letter.

26. <u>Notice</u>. If notice is required, it shall be made to the following:
    To UIA:

    Talent Investment Agency/Unemployment Ins. Agency
    Attn: UIA Deputy Director
    Cadillac Place
    3024 West Grand Blvd., Ste. 12-350
    Detroit, Michigan 48202

    To Plaintiffs:

    David Blanchard
    Blanchard & Walker PLLC
    221 N. Main St., Suite 300
    Ann Arbor, MI 48105

    The Parties may revise its notice persons at any time by written notice to each other.

27. <u>Severability</u>. If any term or other provision of the Settlement Agreement and Dismissal Order is challenged by a Third Party, ("Third Party" is specifically defined to exclude the Parties herein, and any of their officers, directors, managers, members, employees, agents, insurers, parent corporations, subsidiaries, affiliates, predecessors, successors, and assigns), and ultimately held by a court of competent jurisdiction or the U.S. Department of Labor to be invalid, illegal, or incapable of being enforced, (a) either Party shall have the right to terminate the Agreement and recommence suit, notwithstanding any dismissal or initiate one or more new causes of action; or (b) upon written consent of all Parties, the full force and effect of all other terms and provisions of this Agreement shall be enforced, and there shall be substituted for the term or provision at issue a valid, legal, and enforceable provision that effects the original intent of the Parties as closely as possible. If either Party elects to recommence suit under this provision, (i) the Parties agree that any statutes of limitations are tolled from the filing date of the litigation to the date 90 days after any court finding that the provision of the Settlement Agreement and Dismissal Order is invalid, illegal, or incapable of being enforced, and (ii) neither Party will be prevented from pursuing any rights, claims or arguments.

28. <u>Construction</u>. Nothing contained in this Agreement shall be construed to require the commission of any act contrary to law, and whenever there is any conflict between any provision of this Agreement and any statute, law, ordinance, regulation, or U.S. Department of Labor direction, guidance, or UIPL, contrary to which the parties have no legal right to contract, then the latter shall prevail; but in such event, the provisions of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within legal requirements and subject to the procedures of the preceding paragraph.

29. Each of the Parties to this Agreement, acknowledge and represent that:
    a. Such Party has read this Agreement;
    b. Such Party clearly understands this Agreement and each of its terms;
    c. Such Party fully and unconditionally consents to the terms of this Agreement;
    d. Such Party has had the benefit and advice of legal and other counsel of such party's own selection;
    e. Such Party has executed this Agreement fully, with knowledge, and without duress;
    f. Such Party is not relying on any other representations, either written or oral, express or implied, made by any other person or entity; and
    g. The consideration received by such Party has been actual and adequate.

30. <u>Authority.</u> The parties and the individuals signing this Agreement represent and warrant that the individuals signing this Agreement are duly authorized and empowered to act on behalf of and to sign for the Party for whom they have signed respectively, and this Agreement has been duly and validly executed by them, and that this Agreement constitutes valid and binding obligations of the Parties.

31. This Agreement does not prevent the Agency from making any necessary revisions to its policies and procedures required to ensure compliance with state and federal unemployment requirements, including U.S. Department of Labor direction, guidance or UIPL. In the event that changes in law require modification of this Settlement Agreement, the parties agree to provide notice at least 30 days in advance of the implementation of any new policy or practice required that would violate the terms of the Stipulated Agreement and shall, subject to the procedure for notice and cure, stipulate to

      modification of the Settlement Agreement to the degree necessary to bring it into compliance.

32. This Agreement contains the entire Agreement between the parties. Any modification of this Agreement must be made in writing and signed by the parties.

33. This Agreement may be executed in counterparts by any of the signatories hereto, including by facsimile transmission, and as executed shall constitute one agreement. Facsimile or electronic copies of signatures shall be treated as originals for all purposes.

/s/ David M. Blanchard
David M. Blanchard (P67190)
BLANCHARD & WALKER, PLLC
On behalf of all Plaintiffs

Date: January 31, 2017

/s/ Edward A. Macey
Edward A. Macey (P72939)
Associate General Counsel
International Union, UAW
On behalf of Plaintiff UAW

Date: January 31, 2017

/s/ Anthony D. Paris
Anthony D. Paris (P71525)
Lead Attorney
Sugar Law Center
On behalf of Plaintiff SLC

Date: January 31, 2017

/s/ Wanda Stokes
Wanda Stokes
Director
Talent Investment Agency
On behalf of:
Talent Investment Agency (TIA); Unemployment Insurance Agency (UIA); and the Officers sued in their official capacity.

Date: January 31, 2017

Page 11